**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jamal CHILDS, Appellant.**

Superior Court of Pennsylvania.

Submitted July 23, 2012.

Filed Feb. 27, 2013.

David A. Hoffman, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., and WECHT, J.

OPINION BY WECHT, J.

Jamal Childs ["Appellant"] appeals the February 1, 2012 judgment of sentence. Following a bench trial, Appellant was found guilty of burglary [1] and criminal conspiracy.[2] Upon review, we affirm.

On May 11, 2011, Antoinette Margita ["Margita"] returned home from work to discover that her apartment's living room window was partially open and her television was missing. Notes of Testimony ["N.T."], 2/1/12, at 7–8. Margita immediately called the police and asked a building maintenance worker to check the apartment building's surveillance camera footage. *Id.* at 8. She discovered that other belongings were missing, including a second television, purses, shoes, jewelry, perfumes, and clothes. *Id.* at 8–9.

When police arrived the next morning to analyze the residence for fingerprints, they discovered fingerprints and palm prints on the living room window that had been ajar. *Id.* at 25–26. Margita told police that she suspected that Appellant committed the burglary because he had sent her multiple text messages on the night of the break-in, asking Margita if she was going to be home. *Id.* at 10–11. Margita was acquainted with Appellant because he was dating a friend of hers, Nicole Frazier ["Frazier"], and had been to Margita's apartment several times. *Id.* at 16–17. Margita reviewed the surveillance video and recognized Appellant and another man, Joseph Scott ["Scott"]. *Id.* at 15–16.

Margita searched for her stolen property at the pawn shop in Braddock and found her television there. *Id.* at 17. Margita had retained the television's packing box and her purchase receipt, both of which displayed the product's serial number. *Id.* The serial number on the receipt and box matched that of the television in the pawn shop. *Id.* Margita informed the police that she had found her television. *Id.* Officer Scott Adams ["Officer Adams"] visited the pawn shop and spoke to the owner, who provided documentation indicating that it was Frazier who had pawned the television. *Id.* at 29–30. The crime lab then

1. 18 Pa.C.S.A. § 3502(c)(1).

2. 18 Pa.C.S.A. § 903(c).

supplied reports confirming that the palm and hand prints belonged to Appellant and Scott. *Id.* at 31. Officer Adams arrested both men. *Id.*

Following a bench trial, the court convicted Appellant of burglary and criminal conspiracy, and sentenced him to eleven and one-half to twenty-three months of incarceration, with credit for time served from September 21, 2011, to be followed by five years of probation. Appellant was ordered to pay $1,645.00 to Margita, $2,100.00 in probation supervision fees, and $1,213.82 in other costs. Appellant filed post-sentence motions seeking a reduction or waiver of the costs, claiming that his sentence was illegal for depriving him proper credit for time served, asserting that his convictions were against the weight of the evidence, and alleging that the imposition of costs was illegal because the trial court failed to hold a hearing on Appellant's ability to pay such costs. In an April 9, 2012 order, the trial court granted Appellant an additional twelve days of credit for time served and denied all other requested relief.

On April 13, 2012, Appellant filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court relied upon its April 9, 2012 opinion disposing of Appellant's post-sentence motions in lieu of a Rule 1925(a) opinion. Appellant raises the following issues for our review:

1) Whether the Court of Common Pleas erred and/or abused its discretion in imposing costs (including probation supervision fees) and/or fines without considering Defendant's ability to pay as required by 18 P.S. § 11.1102(c), 42 Pa.C.S. § 9721(c.1) and 9728(b.2),

Pa.R.Cr.P. 706(C) and/or other law?[3]

2) Whether the convictions are against the weight of the evidence that Defendant was one of the actors who committed the offenses in this matter?

Appellant's Brief at 4.

 First, Appellant argues that the trial court erred in imposing costs without considering his ability to pay. In so arguing, Appellant contests the authority of the court to impose the costs at issue and, therefore, challenges the legality of his sentence. *Commonwealth v. Garzone*, 993 A.2d 306, 316 (Pa.Super.2010), *aff'd*, 613 Pa. 481, 34 A.3d 67 (2012). "A claim that the trial court erroneously imposed an illegal sentence is a question of law and, as such, our scope of review is plenary and our standard of review is de novo." *Commonwealth v. Wilson*, 11 A.3d 519, 525 (Pa.Super.2010).

Appellant was ordered to pay a total of $4,958.82 in costs, fines, and restitution. Itemized Account of Costs, Fees, and Restitution at 2. Appellant does not contest the amount that he was ordered to pay in restitution or in fines. Appellant's Brief at 13–14; Trial Court Opinion ["T.C.O."], 4/12/12, at 2 n. 2. Instead, Appellant argues that the trial court is required to hold a hearing to determine a defendant's ability to pay costs, prior to imposing such costs. The trial court did not hold such a hearing. Appellant claims that, had the trial court held a hearing, it would have found that Appellant has been unable to pay costs at a different conviction: CP–02–CR–0016970–2009. Thus, the court would have concluded that he also is unable to pay the costs associated with this case.

---

**3.** While Appellant's issue suggests that Appellant is opposing the imposition of fines, he abandons this argument in his brief. *See* Appellant's Brief at 10 ("[D]efendant does not challenge the fine in this matter …").

Appellant now asks that we vacate the costs ordered here.

Pursuant to 18 P.S. § 11.1102(c), the court "shall" impose upon a defendant the cost of monthly supervision while on parole, "unless the court finds that the fee should be reduced, waived or deferred based on the offender's present inability to pay." 18 P.S. § 11.1102(c). Similarly, a defendant is liable for the costs of his or her prosecution unless the trial court determines otherwise pursuant to Pa. R.Crim.P. 706(c). 42 Pa.C.S.A. §§ 9728(b.2), 9721(c.1). Rule 706(c) provides, in relevant part, as follows:

(A) A court shall not commit the defendant to prison for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.

(B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.

(C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

Pa.R.Crim.P. 706.

■ Generally, a defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs. *Commonwealth v. Hernandez*, 917 A.2d 332, 336–37 (Pa.Super.2007). While Rule 706 "**permits** a de-fendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments," the Rule only **requires** such a hearing prior to any order directing incarceration for failure to pay the ordered costs. *Id.* at 337 (emphasis added). In *Hernandez*, we were required to determine whether Rule 706 was constitutional in light of *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974). We concluded that a hearing on ability to pay is not required at the time that costs are imposed:

The Supreme Court ... did not state that *Fuller* requires a trial court to assess the defendant's financial ability to make payment at the time of sentencing. In interpreting *Fuller,* numerous federal and state jurisdictions have held that it is not constitutionally necessary to have a determination of the defendant's ability to pay prior to or at the judgment of sentence. ... [We] conclude that *Fuller* compels a trial court only to make a determination of an indigent defendant's ability to render payment before he/she is committed.

*Hernandez*, 917 A.2d at 337. Accordingly, the trial court did not err in denying Appellant a hearing on his ability to pay costs. In the event that Appellant fails to make payment as ordered, the trial court will be required to hold a hearing on Appellant's ability to pay.

■ Appellant next claims that his convictions for burglary and criminal conspiracy were contrary to the weight of the evidence. Appellant argues that the evidence does not support a finding that he was one of the actors who entered Margita's apartment. Our scope and standard of review are well-settled:

An allegation that the verdict is against the weight of the evidence is addressed

to the discretion of the trial court. The Pennsylvania Supreme Court has explained that [a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Manley,* 985 A.2d 256, 262 (Pa.Super.2009) (internal citations and quotation marks omitted).

Appellant claims that the only evidence connecting Appellant to the burglary includes: "a dark surveillance video based upon one of the actors' gait and ambulatory conduct; [Appellant's] palm prints on an open window in the complainant's apartment; and the fact that one of the items stolen was pawned by [Appellant's] girlfriend." Appellant's Brief at 14. Appellant argues that these facts linking him to the crimes are too tenuous to support his convictions. He claims, for example, that his prints may have been on Margita's window because he was a guest at her apartment in the summer and may have opened the window to cool the apartment. *Id.* However, Appellant overlooks additional evidence presented at trial that belies his alternative factual accounts. For example, Appellant's prints were found on the *outside* of Margita's window, contradicting Appellant's alternative characterization of the facts. Further, the court was shown the surveillance video that served to identify Appellant and was able to draw its own conclusions. Based upon our review of the record, the verdict is not against the weight of the evidence. The trial court did not abuse its discretion in denying Appellant's motion for a new trial.

Judgment of sentence affirmed. Jurisdiction relinquished.